# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**YALEIKA JUSINO-SANTANA**,

   Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

   Defendant.

Civil No. 16-2756 (BJM)

## OPINION AND ORDER

Yaleika Jusino-Santana ("Jusino") seeks review of the Commissioner's finding that she is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. Jusino contends the Commissioner's decision should be reversed because the administrative law judge ("ALJ")'s residual functional capacity ("RFC")[1] finding and step five non-disability determination were not supported by substantial evidence. Docket Nos. 1, 19. The Commissioner opposed. Docket No. 28. This case is before me on consent of the parties. Docket Nos. 5, 7. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence

---

[1] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the Administrative Law Judge ("ALJ") assesses the claimant's RFC and determines at step four whether the impairments prevent the claimant from doing the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in

view of her RFC, as well as her age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of his insured status, or her date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript.

Jusino was born on October 27, 1980, has a 12th grade education, does not speak English (but speaks Spanish), and worked as an electronics manufacturer (for one year), a restaurant cashier (for three years), and a correctional officer (for nine years). Social Security Transcript ("Tr.") 36, 45, 392, 412, 419, 421. On October 3, 2012, Jusino applied for disability insurance benefits, claiming to have been disabled since November 30, 2011 (alleged onset date) at 31 years of age[2] due to an emotional condition resulting from an incident with a work supervisor. Tr. 27, 46, 234, 392-396. She last met the insured status requirements on December 31, 2016 (date last insured). Tr. 27, 417. The claim was denied initially and on reconsideration. Tr. 149, 153. A hearing before an ALJ was held on February 2, 2015. Tr. 42-82. On April 20, 2015, the ALJ found at step five that Jusino was not disabled as defined in the Act. Tr. 36-37. Jusino requested review of the ALJ's decision, and on August 2, 2016, the Appeals Council denied Jusino's request, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1, 15. The present complaint followed. Docket No. 1.

---

[2] Jusino was considered to be a younger individual (Tr. 36), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

*Treating physicians*

    *State Insurance Fund ("SIF")*

Jusino received psychiatric treatment under the auspices of the SIF from November 2011 to January 2014 for major depressive disorder, anxiety, and adjustment disorder. Tr. 242-279, 294-298, 447, 543-579, 610-614.

At the initial psychological evaluation on February 1, 2012, Jusino appeared sad and anxious, but was alert, coherent, oriented (in time, place, and person), cooperative, and attentive. Her ability to pay attention, concentrate, understand, reason, and remember seemed adequate. She followed instructions, and showed capability to discriminate and avoid risks. Her thought content was appropriate, and she showed no signs of obsessive, delusional, suicidal, or homicidal ideas. Her Global Assessment of Functioning ("GAF") score was 65.[3] Tr. 271-273, 572-574.

Progress notes from September 2012 and December 2012, and February 2013 show that Jusino was anxious and agitated, but was talkative, alert, oriented (in time, place and person), and cooperative. Her memory and concentration were adequate. Her thought process was coherent, goal-directed, relevant, and logical. Her judgment was good, but her insight was partial. She exhibited no thoughts of self-harm or harm to others, no hallucinations, and no illusions. In July, her adherence to medications was poor, but by December 2012 it was good. Her response to treatment was poor, but by February 2013 it was good. Her GAF scores were between 60 and 72. Tr. 543, 546, 559. Dr. Pedro Velez ("Dr. Velez") recommended partial hospitalization. Tr. 545, 551.

    *Dr. Maria Quiñones-Almodovar ("Dr. Quiñones")*

Upon referral from the SIF, Dr. Quiñones, psychologist, diagnosed Jusino with severe major depression, with moderate anxiety. This record reflects five appointments with Dr.

---

[3] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" *Hernandez v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013)(*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)). "The GAF score range between 41 and 50 is described as '[s]erious symptoms … OR any serious impairment in a social, occupational, or school functioning …'" *Id*. at f.n. 2. "A GAF score of 61-70 indicates: 'Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.' DSM-IV at 34."*Lopez v. Colvin*, No. 15-cv-30200-KAR, 2017 U.S. Dist. LEXIS 49183, at f.n. 5 (D. Mass. Mar. 31, 2017).

Quiñones, from July 17 to August 24, 2012 and her recommendation that Jusino keep receiving psychiatric services to manage her depression and anxiety. Jusino expressed being emotionally unstable due to work situations, having poor impulse control, and feeling afraid at work. She further expressed that her conditions affected her family and social relationships, and that anxiety affected her eating and sleep habits. Dr. Quiñones ceased treatment and referred the case to other psychologists (Jusino later began treatment with Dr. Yaritza Bartolomey) after Jusino sexually harassed and stalked Dr. Quiñones. Tr. 177-178, 240-241, 473-474, 540-541.

*Hospital Panamericano*

The SIF also referred Jusino to Hospital Panamericano. From December 5 to 18, 2012, Jusino was submitted to a partial hospitalization for anxiety and depression, and was diagnosed with Type 2 bipolar disorder and impulse control disorder, with a GAF score of 60. Jusino exhibited an ungainly appearance, agitated motor control, hyperactivity, hypersexuality, poor impulse control, volatile affect, irritability, superficial insight, and poor judgment. She had not being complying with treatment. However, her memory (immediate, recent, and remote) was intact, she was oriented (in time, person, and space), and had good concentration. Jusino was prescribed medications for anxiety, depression, and impulse control. Tr. 201, 215-219, 317-320, 179-232, 477, 475-528.

Progress notes show that Jusino tolerated and actively participated in the therapy sessions. She would reveal information about herself, and expressed that she would try to participate and be more spontaneous in sessions, seek professional help, and change how she viewed her problems. Some of the daily goals included maintaining concentration, completing verbal instructions, communicating with colleagues, and taking on leadership roles, which she fulfilled. The discharge summary indicates that Jusino responded satisfactorily and completed the partial hospitalization. Jusino was alert, oriented in the three spheres, calm, and did not present psychotic thoughts, perceptual hallucinations, or suicidal or homicidal ideas. She tolerated the medications and did not present side effects. She worked on developing strategies for self-control, relaxation, and anger management, and had assertive communication skills reinforced to improve interpersonal and spousal relations. Tr. 186-192, 199, 202, 209, 214, 482-488, 495, 498, 505, 510.

On February 27, 2013, progress notes from after her partial hospitalization from the SIF's Dr. Velez indicate that Jusino was mildly agitated and anxious. She presented constricted affect, and had limited functioning regarding stress management. However, she was alert, cooperative,

and oriented. Her memory and concentration were adequate. Her thought process was coherent, goal directed, relevant, and logical. Her judgment was good, but her insight was partial. She did not present hallucinations, illusions, or ideas of self-harm or to others. She was also responding well to treatment, and was adhering to the medications. Tr. 543.

### Dr. Yaritza Bartolomey ("Dr. Bartolomey")

Dr. Bartolomey, clinical psychologist, treated Jusino bimonthly, from October 2012 to December 2014, for impulse control disorder, depression and anxiety. On August 22, 2013, Dr. Bartolomey found that Jusino was oriented and had no memory problems, but showed difficulty concentrating, tolerating stress and frustration, and persisting in a task that required mental effort to pay attention. She also had poor impulse control and judgment, and anger management problems, which caused problems with her interpersonal relationships. Dr. Bartolomey assessed that Jusino had adequate capacity for understanding and retaining information, and the ability to concentrate and persist at work-related simple tasks. Tr. 318, 320, 446, 592-596. On a January 9, 2015 psychological report for the DDS, Dr. Bartolomey noted that Jusino had not achieved remission of symptoms of anxiety, but did succeed in reducing the intensity in the manifestation of some of the symptoms. Tr. 625-627.

### Dr. Ronald Malave ("Dr. Malave")

Dr. Malave, psychiatrist, diagnosed and treated Jusino for bipolar disorder with pharmacotherapy and psychotherapy from January 2013 to November 2014. Tr. 280-287, 294-298, 580-591, 615-623. Progress notes for four appointments from January to July 2013 show that Jusino always appeared well-groomed and was cooperative. Her mood was sad and anxious, and she showed cognitive difficulties in attention and concentration in three of the four appointments. Sometimes, her motor activity was retarded and antalgic; at other times, increased. Her affect was constricted, inappropriate, and labile. Her GAF score was between 55 and 65. Tr. 318, 581-584.

Dr. Malave prepared a medical psychiatric questionnaire, dated July 31, 2013, in which he reported that Jusino's attitude was withdrawn; her mood, depressed; and her affect was labile, depressed, and irritable. Her thought process was coherent, relevant, and logical. She was oriented in person and place, but not time. Her memory (immediate, recent, and remote) were preserved, and her judgment was average. Her insight was moderate. Tr. 288-292, 600-604.

Dr. Malave also prepared a mental RFC assessment, dated August 7, 2013, in which he concluded that Jusino's history of intense mood swings and diminished attention and concentration

substantially limited her ability to function in a work setting. As to understanding and memory, Dr. Malave assessed that Jusino was moderately limited in her ability to remember locations and work-like procedures, and to understand and remember very short and simple instructions. She was markedly limited in her ability to understand and remember detailed instructions.

As to sustained concentrations and persistence, Jusino was moderately limited in her ability to carry out very short and simple instructions, and to make simple work-related decisions; markedly limited in her ability to carry out detailed instructions and to sustain an ordinary routine without special supervision; and extremely limited in her ability to maintain attention and concentration for extended periods of time, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, and complete a normal work-day and work-week without interruptions.

As to social interaction, Dr. Malave found that Jusino was moderately limited in her ability to interact appropriately with the general public, and to ask simple questions or request assistance; markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors; and extremely limited in her ability to get along with coworkers or peers. As to adaptation, Jusino was moderately limited in her ability to be aware of normal hazards and take appropriate precautions; markedly limited in her ability to respond appropriately to changes in the work settings; and extremely limited in her ability to make plans independently of others. Tr. 605-609.

Dr. Malave's 2014 progress notes (there are five) reflect that Jusino's symptoms improved. Her mood was euthymic, her affect appropriate, she had no cognitive difficulties, and her thought content was normal. Her GAF was between 55 and 70. Tr. 615-620.

***Procedural History***

Jusino applied for disability benefits on October 3, 2012 (Tr. 27, 392), claiming that she stopped working on November 30, 2011 because she suffered from depression, anxiety, and insomnia. Tr. 420. Her condition limited her ability to work because it affected her memory, concentration, and ability to understand, follow instructions, complete tasks, get along with others, and sit or stand for long in the same place. She was forgetful, and struggled to follow instructions unless they were written down and she read them several times (she would leave written instructions on the fridge for her to see and review). She could not follow spoken instructions

because she would forget them. She also claimed being very impulsive, disliking being told what to do, and could become aggressive when spoken to with attitude. Also, "[n]oises make her crazy." Tr. 159-166, 419-433.

Before, she was active. She worked, and did outdoor activities and house chores. Now, she could not sleep because of her anxiety, and would wake up in a bad mood. She took her medications and spent her day watching television and eating meals prepared by others (her partner, mother, or aunt). Tr. 160, 427. Sometimes, she would wash clothes or do some dusting. Jusino claimed needing help or reminders to take her medications, take care of her personal needs and grooming, and finish chores. Tr. 161, 428. She did not like going out because she would get in a bad mood and people (including her neighbors) annoyed her, and would not drive because at times "my mind goes blank during the journey." She did not handle money because she was wasteful and could not control her spending. Tr. 162-164, 429-431. She rode her bike (about once a week) or walked as her hobby and to handle stress, and went to sporting events on a regular basis. Tr. 163, 165, 430, 432. Jusino reported in her application having two children (Tr. 393), but stated in her function report that she did not take care of others, and that her children's crying drove her crazy. Tr. 160, 164, 427, 431.

Upon referral from the Disability Determination Program, Dr. Alberto Rodriguez ("Dr. Rodriguez"), psychiatrist, performed a consultative examination on January 19, 2013. Tr. 233-238, 532-537. Dr. Rodriguez diagnosed moderate major depressive affective disorder, single episode, with a GAF of 60 and a reserved prognosis. Tr. 237, 536. Jusino told Dr. Rodriguez that her daily activities included personal grooming, chores, taking medications with reminders, manage money and pay bills with help from her partner, and go shopping or watch television. Dr. Rodriguez observed that Jusino appeared depressed and anxious, but exhibited a good general appearance, was cooperative and kept good visual contact. Her psychomotor activity was adequate. Her thought organization was logical, coherent, and relevant. Jusino was oriented in person, place, and time. Her memory (immediate, short term, recent, and past and remote), attention span, and ability to concentrate during examination were adequate. Her judgment, self-criticism ability, impulse control activity, and social interaction were also adequate. Tr. 235-237, 534-536.

Dr. Jesus Soto ("Dr. Soto"), a State Agency psychologist, reviewed the medical evidence and assessed that Jusino had a severe mental condition (moderate, major depressive disorder), but did not meet the diagnostic criteria for Section 12.04 (Affective Disorders) ("A" criteria). The

evidence showed mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration ("B" criteria). There was no evidence to establish the presence of "C" criteria, either. Tr. 305-306. Dr. Soto assessed that Jusino retained the mental RFC to learn, understand, remember, and carry out simple instructions; maintain attention and concentration for two hour periods without undue interruptions; perform as per schedule and routine; appropriately interact with supervisors, co-workers, and others; and adequately complete a normal workweek and workday. Tr. 309.

The claim was denied on February 14, 2013, with a step four finding that Jusino was not disabled because her condition limited her ability to do certain job-related tasks,[4] but these limitations still allowed her to do her previous job as an electronic equipment employee. Tr. 149-152, 300-311, 330-333.

On September 23, 2013, the claim was denied upon reconsideration. The notice specified that the evidence was reviewed by Dr. Sydnia Rosado ("Dr. Rosado") and a State agency disability specialist, and that additional medical evidence and documents submitted after the first decision were considered. Dr. Rosado stated that the evidence in file did not support Jusino's allegation of her emotional condition worsening, that the severity of her symptoms were partially credible, and that the overall evidence supported the diagnosis of a moderate, major depressive disorder. Dr. Rosado assessed that, as per the overall weight of the evidence, Jusino retained the ability to learn, understand, remember, and carry out simple work instructions; maintain attention and concentration for two hour periods without undue interruptions; perform as per schedule and routine; appropriately interact with supervisors, coworkers, and others; and adequality complete a normal workweek and workday. The initial determination of not disabled was affirmed as written. Tr. 153-155, 312-327, 336-338, 597-599.

During this appeal time period, Jusino submitted additional function and disability reports, in which she again claimed that her conditions had changed. She felt depressed, anxious, and desperate. She'd have mood swings, cry often, get angry and aggressive, and felt people were staring at her. She had trouble concentrating, and was forgetful. She did not care for her personal needs, and her partner would remind her to shower, wash her hair, and take her medications. She

---

[4] The "Notice of Disapproved Claim" does not specify findings as to how her condition limited her ability to do certain job-related tasks. Tr. 149.

did not care to do household chores so her partner would do them, but she would wash clothes and hang them to dry. She got anxious and desperate around a lot of people and noise, and preferred to be alone. Her conditions also limited her ability to follow instructions, complete tasks, get along with others, and sleep. Her daily activities included sitting in front of the television, resting, and riding her bike (which helped her handle stress). She did not claim side effects from her medications. Tr. 168-174, 435-459

At Jusino's request, a hearing before an ALJ was held on February 2, 2015. Tr. 42-82, 345-369, 374-381. A medical expert (Dr. Ramon Fortuño Ramirez), a VE (Dr. Hector Guerra Prados), and Jusino testified. Tr. 27, 102-104.

Dr. Fortuño testified at length about the medical evidence he reviewed, and assessed that Jusino had a moderately severe mental condition which lasted 12 continuous months or more, for which she received medications in moderate doses corresponding to the moderate mental condition, and that in his opinion, the severity of her mental impairment did not meet or equal section 12.04 of the impairments listed in Appendix 1, Subpart P of Regulation No. 4 (20 CFR, Part 404). In his opinion, Jusino's condition resulted in mild restrictions for activities of daily living, and moderate restrictions for social functioning and for maintaining concentration, persistence, and pace. Jusino was limited to simple and repetitive tasks, with occasional interaction with the general public and no problem interacting with supervisors or coworkers. Tr. 34, 54-79.

The ALJ asked Dr. Guerra if a person with Jusino's age, education, vocational and educational profile, and no physical limitations, but with the following psychiatric and emotional limitations could work: limited to simple, repetitive tasks, with occasional interaction with the general public. Dr. Guerra testified that Jusino would not able to perform past relevant work, but could perform other jobs (unskilled and of light exertion) in the national economy, such as inspector, electronics worker, and assembler of electrical accessories I. Jusino's attorney added to the ALJ's hypothetical question if a person that could less than occasionally take instructions and reply accordingly to criticism from supervisors be able to work. The VE answered that she could not perform any job in a sustained way. Jusino's attorney then asked if such a person as in the ALJ's hypothetical question that could less than occasionally get along with coworkers without distracting them or exhibiting behavioral extremes be able to work. The VE answered that she could not. Tr. 36-37, 79-81.

Jusino testified that therapy and medications for her condition have not helped. She still felt depressed and anxious, and her concentration and memory were not good. She could not sleep, and could not be around people because she would become somewhat aggressive. She was always accompanied by her husband or mother. While her husband or mother cooked or did the shopping for food and clothing, Jusino performed some household chores like cleaning. She drove the children to school and helped them with their homework. She further testified that she sat and watched television or listened to music during the day, and occasionally went out with friends and walked in the park. The medications prescribed for panic attacks controlled her, but therapy to control her anger and distract her mind have not helped. Tr. 30, 47-54.

On April 20, 2015, the ALJ found that Jusino was not disabled under sections 216(i) and 223(d) of the Act. Tr. 37. The ALJ sequentially found that Jusino:

(1) had not engaged in substantial gainful activity since her alleged onset date of November 30, 2011 through her date last insured (Tr. 29);

(2) had severe impairments: major depression not otherwise specified, major depressive disorder, anxiety disorder not otherwise specified, adjustment disorder with mixed anxiety and depressed mood, bipolar disorder not otherwise specified, and impulse control disorder not otherwise specified (Tr. 29);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526) (Tr. 30);

(4) could not perform past relevant work but retained the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: jobs involving simple and repetitive tasks with occasional interaction with the general public (Tr. 31); and

(5) as per her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Jusino could perform (such as inspector, electronics worker, and assembler-electrical accessories I). Tr. 36-37.

The ALJ further found that Jusino's mental condition could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 32.

The ALJ gave great weight to the progress notes and findings by the SIF and Hospital Panamericano doctors, to the treating psychologists Dr. Quiñones' and Dr. Bartolomey's opinions,

to the state agency psychologists, to the consulting psychiatrist Dr. Rodriguez, and to the medical expert Dr. Fortuño because their assessments and GAF findings were well supported by medically accepted clinical and laboratory diagnostic techniques. Tr. 34-35. The ALJ gave little weight to Dr. Malave's opinion because it was inconsistent with his own progress notes, GAF findings, and other evidence in the record. Tr. 35.

Jusino requested review of the ALJ's decision (Tr. 471), which the Appeals Council denied on August 2, 2016, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1, 15. The present complaint followed. Docket No. 1.

**DISCUSSION**

This court must determine whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process that based on Jusino's age, education, work experience, and RFC, there was work in the national economy that she could perform, thus rendering her not disabled within the meaning of the Act. The ALJ determined that through the date last insured, Jusino retained the RFC to perform a full range of simple jobs at all exertional levels, with occasional interaction with the general public. Tr. 31. Jusino argues that the ALJ's RFC determination was erroneous, and therefore, the hypothetical question posed to the VE did not accurately reflect her limitations. Specifically, that the hypothetical questions did not accurately reflect Dr. Malave's reports and notes, that the ALJ did not offer "good reasons" to disregard Dr. Malave's opinion, and that the ALJ improperly relied on GAF metrics.

The ALJ is required to express a claimant's impairments in terms of work-related functions or mental activities, and a VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* Also, when determining which work-related limitations to include in the hypothetical question, the ALJ must: (1) weigh the credibility of a claimant's subjective

complaints, and (2) determine what weight to assign the medical opinions and assessment of record. *See* 20 C.F.R. §§ 404.1527, 404.1529.

The ALJ determined that Jusino retained the RFC to perform jobs involving simple and repetitive tasks with occasional interaction with the general public. A claimant seeking disability benefits based upon mental illness must establish that it impedes her from performing the basic mental demands of competitive remunerative unskilled work on a sustained basis, that is: (1) understand, carry out, and remember simple instructions; (2) respond appropriately to supervision, coworker, and usual work situations; and (3) deal with changes in a routine work setting. *Ortiz*, 890 F.2d 520, 526 (1st Cir. 1989) (*quoting* SSR 85-15). For a claimant to understand, carry out, and remember simple instructions in any job, she must have the mental ability to remember very short and simple instructions, and the "ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." SSA's Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(C)(3).

Treatment records from the SIF, Hospital Panamericano, and Dr. Bartolomey, and from consultative physician Dr. Rodriguez, show that Jusino's ability to pay attention, concentrate, understand, reason, and remember were adequate; and that she was responding well to treatment and was achieving remission in the intensity of her symptoms. During the partial hospitalization, she tolerated being around and engaged with others during the therapy sessions. Dr. Bartolomey assessed that, although Jusino still exhibited anxiety symptoms, she had adequate capacity for understanding and retaining information, and was able to concentrate and persist at work-related simple tasks.

Dr. Soto (the state agency psychologist) and Dr. Fortuño (the medical expert at the hearing) both found that Jusino had moderate difficulties in maintaining concentration, persistence, or pace, and in maintaining social functioning, while Dr. Malave (treating psychiatrist) assessed that Jusino was moderately limited in her ability to remember, understand, and carry out very short and simple instructions, but extremely limited in her ability to maintain attention and concentration for extended periods of time; moderately limited in her ability to interact with the general public; and extremely limited in her ability to get along with supervisors and coworkers. In contrast with Dr.

Malave's finding that Jusino was substantially limited in her ability to function in a work setting, Dr. Soto (and affirmed by Dr. Rosado on reconsideration of the initial denial of benefits) opined that Jusino had the mental RFC to learn, understand, remember, and carry out simple instructions; maintain attention and concentration for two-hour periods without undue interruptions; perform as per schedule and routine; appropriately interact with supervisors, co-workers, and others; and adequately complete a normal workweek and workday. Dr. Fortuño also assessed that Jusino could perform simple and repetitive tasks, with occasional interaction with the general public and no problem interacting with supervisors or coworkers. I also note that, according to the transcript of the hearing, Dr. Fortuño extensively testified as to the medical evidence he considered in his assessment, discussing in detail the treatment notes from the different treating sources, including Dr. Malave's progress notes and RFC assessment.

The ALJ also noted at the hearing that Jusino showed no mental distress, was an adequate informer who readily answered the ALJ's questions, and related well at the hearing setting. The ALJ further noted that Jusino responded well to psychiatric partial hospitalization in an outpatient basis, and was subsequently discharged in a stable condition. In addition, Jusino testified and submitted in reports that she could perform some chores (alone or under her husband's or mother's supervision) and occasionally socialize, and that she was responding well to her medications.

I also note that Jusino's GAF scores from the different treating sources, and the consultative source, were between 55 and 72. Dr. Malave's 2014 GAF score assessment was between 55 and 70, mostly 60 and above. A GAF score of 61-70 indicates "'some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.' DSM-IV at 34." *Lopez v. Colvin*, No. 15-cv-30200-KAR, 2017 U.S. Dist. LEXIS 49183, at f.n. 5 (D. Mass. Mar. 31, 2017).

Based on the above summary, I conclude that there is substantial evidence in the record from different treating and consultative sources, including Dr. Malave's opinion, and Jusino's testimony that supports a finding that Jusino could understand, carry out, and remember simple instructions, and occasionally interact with the general public.

Jusino further argues that the ALJ did not offer good reasons to disregard Dr. Malave's assessment that Jusino would not be able to work in contact with others, which thus constitutes an omission of a functional limitation from the hypothetical presented to the VE. The regulations

require an ALJ to carefully consider a medical source's opinion about any issue. SSR 96-5p, 1996 SSR LEXIS 2. In reviewing the evidence, the ALJ should give "*more* weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Factors to be considered are set forth in 20 C.F.R. §§ 404.1527(c), which include:

(1) the examining relationship (more weight is given to the medical source who has examined the claimant);

(2) the treatment relationship (more weight is given to a treating source's opinion because she/he can provide a detailed, longitudinal picture of a claimant's impairments, including the length of the treatment relationship and the frequency of treatment, and the nature and extent of the treatment relationship);

(3) the supportability of the treating source's opinion with relevant evidence such as medical signs and laboratory findings;

(4) the consistency of the treating source's opinion with the record as a whole; and

(5) the area of specialty of the medical source offering the opinion. 20 C.F.R. § 404.1527(c).

The ALJ did not give controlling weight to Dr. Malave's opinion, finding that the severity of the restrictions offered by Dr. Malave were inconsistent with other medical evidence in the record, which is a valid reason to discount a medical assessment. The opinion of a treating physician is presumed to carry controlling weight as long as it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.*; SSR 96-2p, 1996 SSR LEXIS 9. Once the ALJ decides what weight to give a treating source, under the "good reasons" requirement, he is required to include in the notice of determination "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. The ALJ may reject a treating physician's opinion when it is not supported by clinical evidence or is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Arias v. Comm'r Soc. Sec'y*, 70 F. App'x 595, 598 (1st Cir. 2003). The ALJ's decision contains a lengthy summary of the treating, examining,

and consultative opinions the ALJ considered, and I find that the discussion of the evidence was sufficient to give the court notice of the weight given to the medical opinions, particularly Dr. Malave's.

Lastly, Jusino argued that the ALJ improperly relied on GAF metrics because the SSA's administrative memorandum AM-13066 advises adjudicators that a GAF score should not be dispositive of impairment severity. The Commissioner pointed out that the use of GAF scores were discontinued in the current Diagnostic and Statistics Manual of Mental Disorders (5th edition) ("DSM-V"), which was published in 2013, but were still part of the DSM-IV-TR at the time of Jusino's treatment. Because the GAF scores are no longer used in the DSM-V, the SSA directed adjudicators through the AM-13066 to continue receiving and considering GAF scores as they would with other opinion evidence, but that the score must have supporting evidence to be given significant weight. *Valentin-Incle v. Comm'r of Soc. Sec.*, Civ. No. 15-2137 (MEL), 2018 U.S. Dist. LEXIS 215060, 2018 WL 6721340, at *10 n.2 (D.P.R. Dec. 19, 2018) (citations omitted). I note that the ALJ used the GAF scores in the record, in conjunction with other evidence, as part of the RFC discussion and non-disability findings. The ALJ does not exclusively rely on the GAF scores to assess the severity of Jusino's mental condition, but makes reference to them in determining her functional abilities and limitations.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding that Jusino could perform simple and repetitive work with occasional interaction with the general public.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See*

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of March, 2019.

*s/ Bruce J. McGiverin*  .
BRUCE J. MCGIVERIN
United States Magistrate Judge